IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| LAWRENCE SHANDOLA,<br><br>Appellant,<br><br>v.<br><br>PAULA HENRY and JOHN DOE HENRY, and the marital community thereof; LEW COX, individually and in his Official Capacity or Executive Director of VIOLENT CRIMES VICTIM SERVICES; ANNE NELSON and JOHN DOE NELSON, and the marital community thereof; LAUREEN NICOLAY and JOHN DOE NICOLAY, and the marital community thereof,<br><br>Respondents. | No. 48346-7-II<br><br><br>PUBLISHED OPINION |

MAXA, A.C.J. – This case involves a party's ability to vacate final monetary judgments under CR 60(b)(11) based on a subsequent Washington Supreme Court decision holding that the statute providing the basis for the judgments was unconstitutional.

Lawrence Shandola filed a lawsuit against Paula Henry, Anna Nelson, Laureen Nicolay, and Lew Cox (collectively "Henry defendants"). The trial court dismissed Shandola's lawsuit and entered money judgments against Shandola in favor of each defendant under the Washington Act Limiting Strategic Lawsuits Against Public Participation (anti-SLAPP statute), RCW 4.24.525. Shandola appealed and this court affirmed the judgment. Eight months after the

mandate was issued, the Supreme Court ruled in *Davis v. Cox* that the anti-SLAPP statute was unconstitutional and invalid because it violated the constitutional right to a jury trial. 183 Wn.2d 269, 288-96, 351 P.3d 862 (2015). Shandola filed a CR 60(b)(11) motion to vacate the judgments against him, arguing that there was no valid basis for the judgments because the anti-SLAPP statute was unconstitutional.

Shandola appeals the trial court's denial of his CR 60(b)(11) motion. We hold that (1) CR 60(b)(11) provides a mechanism for vacating a final judgment based on a subsequent court decision invalidating the statutory basis of the judgment, (2) *Davis*'s invalidation of the anti-SLAPP statute can be applied retroactively, (3) res judicata does not prevent the application of CR 60(b)(11), and (4) there are extraordinary circumstances here justifying relief under CR 60(b)(11). Accordingly, we reverse the trial court's denial of Shandola's CR 60(b)(11) motion and remand for the trial court to strike the money judgments entered against him.

## FACTS

*Shandola Lawsuit*

Shandola was convicted of murder and sentenced to prison. He requested a transfer to Canada for incarceration because he is a Canadian citizen. The Henry defendants wrote letters to the Department of Corrections opposing Shandola's transfer. After Shandola's transfer request was denied, he sued the Henry defendants, alleging false light invasion of privacy and intentional infliction of emotional distress based on those letters. Shandola represented himself.

*Anti-SLAPP Statute and Motion to Dismiss*

Before *Davis*, the anti-SLAPP statute provided a special procedure for handling lawsuits aimed at chilling the exercise of free speech and the right to petition for redress. The statute permitted a defendant to file a special motion to strike any claim "based on an action involving

public participation and petition." RCW 4.24.525(4)(a). In order to defeat the special motion to strike, the plaintiff was required to show by "clear and convincing evidence a probability of prevailing on the claim." RCW 4.24.525(4)(b). If a defendant prevailed on the motion to strike, the trial court was required to award the defendant $10,000 plus litigation costs and reasonable attorney fees. RCW 4.24.525(6)(a)(i)-(ii).

On March 23, 2013, the Henry defendants filed a motion to dismiss Shandola's suit under CR 12(b)(6), arguing that they were immune from suit under the anti-SLAPP statute. Shandola opposed the motion, arguing that the Henry defendants had not followed the procedure mandated in the statute. The trial court granted the motion to dismiss. The trial court also entered judgments in favor of each defendant against Shandola for $10,000 plus litigation costs and reasonable attorney fees under the anti-SLAPP statute.

*Shandola Appeal and Final Judgment*

On April 29, 2013, Shandola appealed the trial court's dismissal to this court. He apparently represented himself in the appeal. He argued that the trial court erred because the Henry defendants filed a motion to dismiss under CR 12(b)(6) instead of following the special motion procedures in the anti-SLAPP statute. Shandola did not argue that the anti-SLAPP statute was unconstitutional.

A commissioner of this court considered Shandola's appeal as a motion on the merits and affirmed the trial court's dismissal. The commissioner's ruling was entered on March 20, 2014. We issued a mandate terminating review on September 15.

No. 48346-7-II

*Davis Decision*

On May 28, 2015, the Supreme Court ruled in *Davis* that the anti-SLAPP statute was unconstitutional. 183 Wn.2d at 288-296. The court held that because the statute's special motion procedure required the trial court to adjudicate factual questions without a trial, the statute violated the right to trial by jury guaranteed in article 1, section 21 of the Washington Constitution. *Id.* at 293-94. The court also held that the subsection describing the special motion procedure could not be severed from the rest of the statute, rendering the entire anti-SLAPP statute invalid. *Id.* at 294-95.

*Motion to Vacate*

On July 30, Shandola filed a motion to vacate the judgment against him under CR 60(b)(11). He argued that the trial court's award of $10,000, litigation costs, and attorney fees to each of the Henry defendants could no longer stand in light of the Supreme Court's ruling that the anti-SLAPP statute was unconstitutional.

The trial court noted that the constitutionality of the anti-SLAPP statute was not an issue in the initial dismissal or the appeal. The court did not consider whether extraordinary circumstances existed that would justify relief under CR 60(b)(11). Instead, the court summarily concluded that the principle of finality controlled and it denied Shandola's motion.

Shandola appeals.

ANALYSIS

This case presents two primary issues. First, does CR 60(b)(11) provide a mechanism for vacating a final judgment based on a subsequent Supreme Court decision invalidating the statutory basis of the judgment? We hold that relief potentially is available under CR 60(b)(11)

4

based on a postjudgment court decision. Second, did Shandola show extraordinary circumstances that entitled him to CR 60(b)(11) relief under the facts of this case? We hold that this case does involve extraordinary circumstances and therefore that the trial court abused its discretion in denying Shandola's CR 60(b)(11) motion.

A.      LEGAL PRINCIPLES

CR 60(b) provides that the trial court may relieve a party from a final judgment, order, or proceeding for one of 11 stated reasons. Finality of judgments is a central value in the legal system, but circumstances can arise where finality must give way to the greater value that justice be done. *Union Bank, NA v. Vanderhoek Assocs., LLC*, 191 Wn. App. 836, 846, 365 P.3d 223 (2015). CR 60(b) provides a balance between finality and fairness by listing limited circumstances under which a judgment may be vacated. *Id.* (quoting *Suburban Janitorial Servs. v. Clarke Am.*, 72 Wn. App. 302, 313, 863 P.2d 1377 (1993)).

CR 60(b)(11) states that the court may grant relief from a final judgment for "[a]ny other reason justifying relief from the operation of the judgment." This is a catch-all provision intended to serve the ends of justice in extreme, unexpected situations and when no other subsection of CR 60(b) applies. *In re Det. of Ward*, 125 Wn. App. 374, 379, 104 P.3d 751 (2005). The provision applies to extraordinary circumstances involving irregularities extraneous to the proceeding. *Union Bank*, 191 Wn. App. at 845.

A party must file a motion under CR 60(b)(1), (2) and (3) within one year of the judgment, but motions under the other subsections must only be filed within a "reasonable time." CR 60(b).[1]

The decision to grant or deny a motion to vacate a judgment under CR 60(b) is within the trial court's discretion. *Jones v. City of Seattle,* 179 Wn.2d 322, 360, 314 P.3d 380 (2013). Therefore, we review CR 60(b) orders for abuse of discretion. *Union Bank*, 191 Wn. App. at 842. A trial court abuses its discretion when its decision is based on untenable grounds or is made for untenable reasons. *Id.*

B.       CR 60(b)(11) RELIEF BASED ON POST-JUDGMENT COURT DECISION

Shandola argues that the *Davis* decision invalidating the anti-SLAPP statute, which was the sole basis for the monetary judgments against him, provides the basis for CR 60(b)(11) relief. The threshold question is whether CR 60(b)(11) can apply in this situation. We hold that CR 60(b)(11) provides a mechanism for vacating a final judgment based on a postjudgment appellate court decision invalidating the statutory basis of the judgment. Further, we hold that *Davis* can be applied retroactively under CR 60(b)(11) and that res judicata does not preclude relief under CR 60(b)(11) in this case.

1.       Applicable Cases

This court stated in *Union Bank* that a change in the law can constitute extraordinary circumstances to justify relief under CR 60(b)(11). 191 Wn. App. at 845. Three cases have addressed when a change in the law supports the grant of relief under CR 60(b)(11): *Union Bank*,

---

[1] Shandola filed his motion approximately nine months after the judgments became final and about two months after the Supreme Court's decision in *Davis*. The Henry defendants do not argue that Shandola failed to file his motion within a reasonable time.

191 Wn. App. 836; *Estate of Treadwell v. Wright*, 115 Wn. App. 238, 61 P.3d 1214 (2003); and

*In re Marriage of Flannagan*, 42 Wn. App. 214, 709 P.2d 1247 (1985).

   a. *Union Bank*

  In *Union Bank*, the trial court granted summary judgment in favor of the defendants based on the only appellate case on point. 191 Wn. App. at 841. However, 18 days later Division One of this court issued an opinion that directly contradicted the holding of the case on which the trial court relied. *Id.* During a subsequent hearing before the appeal period had expired, the trial court mentioned the new case and indicated its willingness to reverse its summary judgment order in light of that case. *Id.*

  The plaintiff moved under CR 60(b)(11) to vacate the summary judgment order, arguing that the new appellate decision constituted a substantial change in the law creating extraordinary circumstances that justified relief. *Id.* The trial court granted the plaintiff's motion to vacate and the defendants appealed. *Id.* at 842. This court held that the trial court did not abuse its discretion in granting the motion to vacate under CR 60(b)(11) because Division One's decision created a conflict between the divisions that constituted a post-judgment change in the controlling law. *Id.* at 847-48. The court stated that the "timing and attendant circumstances" of the Division One decision "constituted extraordinary circumstances allowing the trial court to vacate its judgment." *Id.* at 846-47.

   b. *Treadwell*

  In *Treadwell*, the trial court granted summary judgment in favor of the defendant in an attorney malpractice case. 115 Wn. App. at 241. The summary judgment was based on the court's ruling that an attorney creating a guardianship at the request of a guardian did not owe a

duty to the ward of the guardianship. *Id.* at 242-43. However, a few months later an appellate court held that an attorney retained to create a guardianship does owe a duty to the nonclient ward. *Id.* at 243-44.

The plaintiff moved to vacate the judgment under CR 60(b)(11) on the basis that the appellate court decision was a change in the law justifying relief. *Id.* at 243, 249. The trial court denied the estate's motion, agreeing with the defendant that she either did not have a duty to the plaintiff under the new appellate court decision or that she had properly discharged that duty. *Id.* at 243, 249-50. The plaintiff appealed both the summary judgment order and the denial of the CR 60(b)(11) motion. *Id.* at 243. On appeal, Division One held that the trial court abused its discretion when it denied the estate's motion to vacate under CR 60(b)(11). *Id.* at 251.

c. *Flannagan*

In *Flannagan*, this court considered in two consolidated cases whether CR 60(b)(11) could be used as a mechanism to reopen final divorce decrees that were rendered during a 20 month period between the United States Supreme Court's decision in *McCarty*,[2] which held that military retirement benefits could not be distributed as community property, and Congress's passage of retroactive legislation providing that military retirement benefits should be distributed as community property. 42 Wn. App. at 215-16. In one of the consolidated cases the trial court granted relief, and in the other case the trial court denied relief. *Id.* at 216-17.

This court considered what other jurisdictions had done in this situation and concluded that most had allowed the reopening of final decrees "when a procedural mechanism existed for

---

[2] *McCarty v. McCarty*, 453 U.S. 210, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981).

such reopening." *Id.* at 220. The two jurisdictions that refused to reopen decrees relied on principles of finality, but they also did not have a rule similar to CR 60(b)(11) available in their jurisdiction. *Id.*

The court concluded "[w]e have found no cases where the doctrine of finality prevailed over the inequity of denying retroactivity, so long as a procedural mechanism such as CR 60(b)(11) existed for retroactive application." *Id.* The court held that CR 60(b)(11) was a mechanism that could allow for the reopening of the final divorce decrees and concluded that there were extraordinary circumstances requiring relief under CR 60(b)(11). *Id.* at 222. As a result, the court held that the trial court that denied the CR 60(b)(11) motion under these circumstances abused its discretion. *Id.* at 223.

2. Analysis

*Union Bank* and *Treadwell* are factually different from this case because in both cases the party seeking CR 60(b)(11) was contemplating appeal or had actually appealed the challenged summary judgment order, and the appeal was still pending when the new appellate case that formed the basis for the CR 60(b)(11) motion was issued. As the court noted in *Union Bank*, this made the importance of finality less compelling. 191 Wn. App. at 847. But both cases clearly support the rule that a trial court can vacate a final judgment under CR 60(b)(11) based on a post-judgment appellate court decision under certain circumstances.

*Flannagan* is much more similar to this case. As in this case, the judgments at issue in *Flannagan* were final when the legislation invalidating existing law took effect.[3] This court

---

[3] One difference between *Flanagan* and this case is that the moving parties in *Flanagan* did not appeal their judgments, while Shandola appealed and lost. However, this is not a meaningful distinction.

clearly held in *Flannagan* that a trial court can vacate a final judgment under CR 60(b)(11) based on a post-judgment change in the law if extraordinary circumstances are present. 42 Wn. App. at 222.

*Union Bank* and *Flannagan*, both decisions from this court, are controlling authority. We hold that CR 60(b)(11) provides a mechanism for vacating a final judgment based on a postjudgment appellate court decision.

3.  Retroactive Application of *Davis* Under CR 60(b)(11)

The Henry defendants argue that the *Davis* decision cannot be applied retroactively to this case under CR 60(b)(11) because this case was final when *Davis* was issued. We disagree.

a.  Retroactive Application of Changes in the Law

Generally, a new civil decision applies retroactively. *McDevitt v. Harborview Med. Ctr.*, 179 Wn.2d 59, 75, 316 P.3d 469 (2013). "The default of retroactive application is overwhelmingly the norm." *Jackowski v. Borchelt*, 174 Wn.2d 720, 731, 278 P.3d 1100 (2012) (internal quotation marks omitted). Only in rare instances will we override the presumption of retroactive application and choose to give a decision prospective-only application. *McDevitt*, 179 Wn.2d at 75.

We will not apply a new decision retroactively if (1) the decision established a new rule of law that either overruled clear precedent upon which the parties relied or was not clearly foreshadowed, (2) retroactive application would tend to impede the policy objectives of the new rule, and (3) retroactive application would produce a substantially inequitable result. *Id.* The Henry defendants do not argue that any of those factors are met regarding the *Davis* decision.

Nothing in *Davis* indicates that the Supreme Court intended it to only apply prospectively. And the court has applied its ruling in *Davis* in two cases that were pending on appeal when *Davis* was decided. In *Akrie v. Grant* and *Worthington v. City of Bremerton*, the court applied the *Davis* decision to vacate the award of statutory damages, attorney fees, and costs under the anti-SLAPP statute. *Akrie*, 183 Wn.2d 665, 668, 355 P.3d 1087 (2015); *Worthington*, 187 Wn.2d 184, 187, 385 P.3d 133 (2016). The court in *Akrie* noted that "basic fairness demands that we not sustain a penalty imposed pursuant to a statute we have held unconstitutional." 183 Wn.2d at 668; *see also Worthington*, 187 Wn.2d at 187.

The Henry defendants argue that *Davis* cannot be applied retroactively by citing to retroactivity cases that are distinguishable and inapplicable here. For example, they cite *Samson v. City of Bainbridge Island* for the rule that courts "do not apply *statutes* retroactively unless they are merely procedural or remedial." 149 Wn. App. 33, 45, 202 P.3d 334 (2009) (emphasis added). However, this case does not involve the retroactive application of a statute. It involves application of a Supreme Court ruling that the statute forming the basis of the judgment was unconstitutional.

We hold that the *Davis* decision holding that the anti-SLAPP statute is unconstitutional generally applies retroactively.

b. Retroactive Application of Law to Final Judgments

The Henry defendants argue that even if *Davis* generally applies retroactively, it cannot apply retroactively to this case because retroactive application is limited to cases pending on review or not yet final. They cite two United States Supreme Court cases for support.

In *James B. Beam Distilling Co. v. Georgia*, the Court stated that "retroactivity in civil cases must be limited by the need for finality; once suit is barred by res judicata or by statutes of limitation or repose, a new rule cannot reopen the door already closed." 501 U.S. 529, 541, 111 S. Ct. 2439, 115 L. Ed. 2d 481 (1991) (citation omitted). The Court similarly stated in *Reynoldsville Casket Co. v. Hyde* that "[n]ew legal principles, even when applied retroactively, do not apply to cases already closed." 514 U.S. 749, 758, 115 S. Ct. 1745, 131 L. Ed. 2d 820 (1995). The Henry defendants argue that under the language in *Beam Distilling* and *Reynoldsville*, *Davis* cannot apply retroactively here because the case was closed before *Davis* was issued.

However, neither *Beam Distilling* nor *Reynoldsville* addressed a rule similar to CR 60(b)(11). Therefore, neither case compels the conclusion that a new appellate case cannot be applied retroactively in the context of a CR 60(b)(11) motion.

The language of CR 60(b) makes it clear that the rule applies to closed cases. CR 60(b) expressly states that the court may relieve a party from a "final judgment." Therefore even when there is a final judgment, CR 60(b)(11) creates a mechanism for reopening the case. *Flannagan*, 42 Wn. App. at 218 ("[F]inal decrees may be reopened under CR 60(b)(11).").

We hold that *Davis* can be applied retroactively in the context of a CR 60(b)(11) motion even after the case has been closed.

4. Res Judicata Inapplicable Under CR 60(b)(11)

The Henry defendants argue that the doctrine of res judicata precludes application of CR 60(b)(11) under the facts of this case. We disagree.

Res judicata, also called claim preclusion, applies when a plaintiff's claim against a party has been dismissed by final judgment in one action and the plaintiff asserts the same claim against the same party *in a subsequent action. Emeson v. Dep't of Corr.*, 194 Wn. App. 617, 626, 376 P.3d 430 (2016). In other words, res judicata applies when a previous claim for which there was a final judgment on the merits and the current claim are so similar that the current claim could have been litigated in the former action. *Storti v. Univ. of Wash.*, 181 Wn.2d 28, 40, 330 P.3d 159 (2014). We review de novo whether res judicata applies. *Emeson*, 194 Wn. App. at 626.

Here, there was a final judgment, but Shandola has not filed a *subsequent* action – there is no second claim. Shandola filed a CR 60(b)(11) motion in the same action. Therefore, an essential element of res judicata is missing. In addition, the Henry defendants do not cite any cases indicating that CR 60(b) must yield to res judicata. While res judicata is meant to ensure the finality of judgments, CR 60(b) is concerned with when finality must give way in order for justice to be done. *Union Bank*, 191 Wn. App. at 846. This court expressly rejected the argument that res judicata precluded application of CR 60(b)(11) in both *Union Bank*, 191 Wn. App. at 846, and *Flannagan*, 42 Wn. App at 223-24.

Accordingly, we hold that the doctrine of res judicata does not prevent the application of CR 60(b)(11).

C.   EXTRAORDINARY CIRCUMSTANCES JUSTIFYING RELIEF UNDER CR 60(b)(11)

That relief *potentially* is available under CR 60(b)(11) based on a postjudgment court decision does not resolve this case. Shandola must show that under the specific facts of this case extraordinary circumstances exist that entitled him to CR 60(b)(11) relief. We hold that the

*Davis* decision and other extraordinary circumstances exist in this case that compel relief under CR 60(b)(11).

    1.   *Davis* Decision

Shandola argues that the *Davis* decision, standing alone, compels relief under CR 60(b)(11). *Union Bank* provides some support for this position because after stating that CR 60(b)(11) required extraordinary circumstances, this court stated that "[a] change in the law may constitute such extraordinary circumstances." 191 Wn. App. at 845. This statement suggests that a trial court has discretion to grant relief under CR 60(b)(11) based solely on a postjudgment appellate decision that changes the law.

However, here the trial court *denied* CR 60(b)(11) relief. Facing a similar ruling in one of its consolidated cases, this court in *Flannagan* focused on extraordinary circumstances other than the change in the law:

> Those [extraordinary] circumstances are as follows: first, the clear congressional desire of removing all ill effects of *McCarty*; second, the alacrity with which the Congress moved in passing the USFSPA [Uniformed Services Former Spouses Protection Act]; third, the anomaly of allowing division of the military retirement pay before *McCarty* and after USFSPA, but not during the 20-month period in between; and fourth, the limited number of decrees that were final and not appealed during that period.

*Flannagan*, 42 Wn. App. at 222 (footnote omitted). The court stated that these extraordinary circumstances allowed for the retroactive application of new legislation "without eroding the doctrine of finality." *Id.* Therefore, the court held that the trial court abused its discretion in denying a CR 60(b)(11) motion given these circumstances. *Id.* at 222-23.

Consistent with *Flannigan*, we consider whether extraordinary circumstances exist other than the *Davis* decision itself to determine whether the trial court abused its discretion in denying Shandola's CR 60(b)(11) motion.

2. CR 60(b)(11) Analysis

Five factors support a finding of extraordinary circumstances in this case. First, *Davis* did not merely change the law – it enforced a strong right under the Washington Constitution. Article I, section 21 states that "[t]he right of trial by jury shall remain *inviolate*." (Emphasis added.) The term "inviolate" means that the right of trial by jury deserves the highest protection. *Davis*, 183 Wn.2d at 288. There is no question under *Davis* that the trial court's judgment here violated Shandola's right to trial by jury. Therefore, if relief is not granted under CR 60(b)(11), Shandola's right would not remain inviolate.

Second, in applying *Davis* to cases pending at the time of that decision, the Supreme Court emphasized that "basic fairness demands that we not sustain a penalty imposed pursuant to a statute we have held unconstitutional." *Akrie*, 183 Wn.2d at 668; *see also Worthington*, 187 Wn.2d at 187. The court's clear desire not to enforce unconstitutional judgments is similar to Congress's desire to remove the effects of *McCarty*, which the court in *Flannagan* listed as an exceptional circumstance. 42 Wn. App. at 222.

Third, Shandola only seeks to vacate the monetary judgment against him, not the dismissal of his lawsuit. That means that granting his CR 60(b)(11) motion will not reopen his case in the same sense as *Union Bank*, *Treadwell*, and *Flannagan*. Implementing Shandola's requested relief would be straightforward – the trial court would simply strike the damages,

15

attorney fees, and costs from its judgment. The trial court will not have to place the case back on the trial calendar or address the merits of the lawsuit.

Fourth, the anti-SLAPP statute was in effect for only five years.[4] Although the five year period is longer than the 20 month period in *Flannagan*, it still is a relatively short, finite period. The disruptive effect of granting Shandola's CR 60(b)(11) motion would be limited to other monetary judgments imposed pursuant to successful anti-SLAPP special motions to strike during that five year window.

Fifth, the anti-SLAPP statute provided the *entire* basis for the judgment against Shandola. This is not a situation where a change in the law affects only one of many issues in a case or is collateral to resolution of the case. As in *Treadwell*, application of the post-judgment decision would reverse the entire outcome of the case.[5]

We hold that these extraordinary circumstances, in addition to the *Davis* decision itself, compel relief under CR 60(b)(11). And the Henry defendants do not claim that Shandola did not file his motion within a reasonable time as required under CR 60(b). Therefore, we hold that the trial court abused its discretion in denying Shandola's CR 60(b)(11) motion.

---

[4] The anti-SLAPP statute became effective on June 10, 2010 and was held unconstitutional by the Supreme Court on May 28, 2015. LAWS OF 2010, ch. 118, § 2; *Davis*, 183 Wn.2d at 269. That represents a five year window during which monetary judgments could have been entered pursuant to the anti-SLAPP statute's provision allowing for an award of $10,000, attorney fees and litigation costs to the party asserting the statute. RCW 4.24.525(6)(a)(i)-(ii).

[5] The only factor that the trial court mentioned in denying Shandola's motion is that Shandola did not challenge the constitutionality of the anti-SLAPP statute in opposing the original anti-SLAPP motion. But the Henry defendants do not argue that the failure to raise a constitutional issue precludes relief under CR 60(b)(11) when the statute supporting the trial court's judgment subsequently is declared unconstitutional. Therefore, we do not address this issue.

D.      ATTORNEY FEES ON APPEAL

Both parties request reasonable attorney fees on appeal.  But Shandola does not provide any basis for the award of attorney fees, and therefore we decline to award attorney fees to him. And the Henry defendants are not the prevailing parties and therefore are not entitled to attorney fees.

CONCLUSION

We reverse the trial court's denial of Shandola's CR 60(b)(11) motion to vacate the money judgments against him, and remand for the trial court to strike those money judgments.

_____
MAXA, A.C.J.


We concur:

_____
WORSWICK, J.


_____
SUTTON, J.