# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DIANA V. GUARDADO, | No. 48903-1-II |
| Respondent, | |
| v. | PART PUBLISHED OPINION |
| OTTO M. GUARDADO, | |
| Appellant. | |

MAXA, A.C.J. – Otto Guardado appeals the trial court's modification, pursuant to CR 60(b)(11), of a 2008 dissolution decree entered in an action dissolving his marriage to Diana Guardado. The decree had awarded Otto[1] the couple's house but did not remove Diana's obligation on the house's mortgage. Because the obligation adversely affected Diana's credit, the court modified the dissolution decree by ordering Otto to sell the house. However, Diana filed her CR 60(b)(11) motion not in the dissolution action, but in a separate action in which she alleged that Otto breached an oral contract to remove her name from the mortgage.

We hold that the trial court erred in granting Diana's CR 60 (b)(11) motion because it did not have authority under CR 60(e)(1) to modify the dissolution decree in the separate breach of contract action. In the unpublished portion of this decision, we discuss Otto's additional arguments and we vacate the trial court's award of attorney fees to Diana.

---

[1] To avoid confusion, we refer to the parties by their first names. No disrespect is intended.

Accordingly, we reverse and vacate the trial court's modification of the dissolution decree and award of attorney fees to Diana, and we remand for further proceedings.

FACTS

*Dissolution and Property Distribution*

In 2008, Otto and Diana filed an action in Skamania County to dissolve their marriage. The trial court entered a dissolution decree on October 17, 2008. The couple's primary asset was the family home in Vancouver. The decree awarded the property to Otto as his separate property and allocated to him liability on a mortgage secured by the property. The decree did not include a provision for removing Diana from the mortgage. Diana apparently also remained on the title.

*Mortgage Payments and Modification*

Otto had trouble making mortgage payments. Diana claimed that he missed 42 payments through 2012. During this time, the mortgage's principal balance was greater than the house's value.

In 2012, Otto sought to modify the mortgage. As part of this process, Otto wrote a letter requesting that Diana be removed from the loan. The bank required that Otto obtain a quit claim deed from Diana for her interest in the property. Diana executed the quit claim deed in November 2012 under the belief that her name would be removed from the mortgage. The bank modified the mortgage in April 2013, restructuring the loan and extinguishing Otto's delinquent payments. However, the modification did not remove Diana from the mortgage.

Diana apparently was never forced to make any mortgage payments herself. But Otto's failure to make mortgage payments adversely impacted Diana's credit.

*Diana's Breach of Contract Lawsuit*

In October 2014, Diana filed a lawsuit against Otto in Skamania County for breach of contract. She alleged that she and Otto had a verbal contract that Otto breached by not removing her from the mortgage. She requested damages, attorney fees, and other just and equitable relief.

On April 14, 2016, the parties proceeded to trial. Both parties testified on the first day of trial, and Diana rested.

The trial court then requested that the parties submit additional briefing on two issues. First, the court stated, "I want to know what authority the court has to order specific performance, in equity, when I would be effectively resulting in modifying [sic] a divorce decree." Report of Proceedings (RP) at 85. Second, the court asked, "[W]hat authority, absent any agreement between the parties, expressed or implied, do I have to modify a decree, if equity demands it?" RP at 85. The court clarified, "I want to know, if they didn't have that oral contract, what authority do I have in equity to make it happen anyway?" RP at 86.

Both parties submitted briefing on April 29, the second day of trial. Diana also filed a motion for relief from the dissolution decree pursuant to CR 60(b)(11), requesting that the court order Otto to refinance or sell his house. Diana filed the motion under the cause number for the breach of contract action, not under the cause number for the parties' dissolution.

*Trial Court Ruling and Judgment*

At the end of the second day of trial, the court ruled that "[a] dissolution decree . . . can be vacated or modified for extraordinary circumstances to overcome a manifest injustice, under CR 60(b)(11)." RP at 151. The court noted that the dissolution decree did not address the situation if Otto fell behind in mortgage payments or could not remove Diana's name from the

mortgage, and that Diana had been harmed as a result. The court concluded that "[t]he easy, simple, elegant solution to this problem . . . is simply to sell the house." RP at 153. Therefore, the court found extraordinary circumstances under CR 60(b)(11) to modify the dissolution decree.

The trial court ordered Otto to sell the house "to give meaning to the [hold] harmless provision [in the dissolution decree], and to bring this matter to a close, in equity." RP at 155-56. The court entered findings of fact and conclusions of law reflecting this ruling. The court also awarded reasonable attorney fees to Diana because it found that Otto had acted in bad faith "by inducing the plaintiff to sign a quitclaim deed, and in withholding the easy solution to the harm he caused the plaintiff." Clerk's Papers (CP) at 348. The court did not enter any findings of fact or conclusions of law regarding Diana's breach of contract claim against Otto.

The trial court entered a judgment and order in the breach of contract case stating that the parties' dissolution decree was modified to require the sale of Otto's property and providing specific details regarding the sale. The judgment included an award of reasonable attorney fees to Diana. The trial court also entered an amendment to the parties' dissolution decree, which contained provisions similar to the judgment regarding the sale of Otto's property, under the cause number for the parties' dissolution action.

Otto appeals the trial court's judgment and order and modification of the dissolution decree.

4

ANALYSIS

A.    LEGAL BACKGROUND

A property disposition in a dissolution decree "may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state." RCW 26.09.170(1). Under this provision, one means of modifying the property disposition in a dissolution decree is a motion for relief under CR 60(b). *See In re Marriage of Knutson*, 114 Wn. App. 866, 872-73, 60 P.3d 681 (2003).

Under CR 60(b), a trial court may relieve a party from a final judgment for one of 11 stated reasons. A catch-all provision under CR 60(b)(11) states that the court may grant relief from a final judgment for "[a]ny other reason justifying relief from the operation of the judgment." This provision is "intended to serve the ends of justice in extreme, unexpected situations and when no other subsection of CR 60(b) applies." *Shandola v. Henry*, 198 Wn. App. 889, 895, 396 P.3d 395 (2017). CR 60(b)(11) "applies to extraordinary circumstances involving irregularities extraneous to the proceeding." *Shandola*, 198 Wn. App. at 895.

B.    CR 60(b) RELIEF FROM A JUDGMENT IN A DIFFERENT CAUSE OF ACTION

Otto argues that the trial court did not have authority to modify the parties' dissolution decree under CR 60(b)(11) in Diana's breach of contract action. He claims that the court could grant CR 60(b)(11) relief only pursuant to a motion filed in the dissolution action. We agree.

CR 60(e)(1) states that application for relief from a judgment under CR 60(b) relief "shall be made by motion filed *in the cause* stating the grounds upon which relief is asked." (Emphasis added.) The issue here is whether this language requires the CR 60 motion to be filed in the same cause of action in which the judgment was entered or simply in any cause of action.

Interpretation of a court rule is a question of law that we review de novo. *N. Coast Elec. Co. v. Signal Elec., Inc.*, 193 Wn. App. 566, 571, 373 P.3d 296 (2016). We interpret courts rules in the same manner as statutes. *Id.* If the rule's meaning is plain on its face, we will give that meaning effect as an expression of the drafter's intent. *Id.* If the rule is ambiguous, we will attempt to determine the rule's intent by reading the rule as a whole, harmonizing its provisions, and considering related rules. *Id.* To determine a rule's meaning, we may employ traditional rules of grammar. *See Guillen v. Pearson*, 195 Wn. App. 464, 471, 381 P.3d 149 (2016), *review denied*, 187 Wn.2d 1005 (2017) (using grammar rules to interpret a statute).

Here, CR 60(e)(1) uses a definite article instead of an indefinite article – "*the* cause" rather than "*a* cause." Use of a definite article is a "recognized indication of statutory meaning." *Dep't of Ecology v. City of Spokane Valley*, 167 Wn. App. 952, 965, 275 P.3d 367 (2012). Under the rules of grammar, placing "the" before the noun "cause" in CR 60(e)(1) references only a single, specified cause of action. *See id.* Based on a plain reading of the entire rule, that single cause of action clearly refers to the cause of action in which the judgment from which relief is sought was entered.

No published case has addressed this issue.[2] However, this court recently held in an unpublished opinion that a party must comply with CR 60(e)(1) by filing a CR 60(b) motion under the same cause number in which the challenged judgment was filed. *Darby v. Clark*

---

[2] Diana argues that Otto waived this issue by not citing any case law in support of his argument. However, the general rule is that a party waives an argument if not supported by any *authority*. *Collins v. Clark County Fire Dist. No. 5*, 155 Wn. App. 48, 95-96, 231 P.3d 1211 (2010). Otto did cite authority – CR 60(e)(1). There is no requirement that a party cite to *case law* to support an interpretation of a court rule, particularly when the issue appears to be one of first impression.

*County*, No. 47285-6-II, slip op. at 3-4 (Wash. Ct. App. Mar. 8, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2047285-6-II%20Unpublished%20Opinion.pdf.[3] This court held that the trial court in that case could not grant a CR 60(b) motion filed under a new cause number that was different than the challenged judgment's cause number. *Darby*, No. 47285-6-II, slip op. at 3-4. We agree with this conclusion.

Diana argues that even if the trial court erred in modifying the dissolution decree in the breach of contract cause of action, that error was harmless. She emphasizes that reversing the trial court's order and requiring her to file a CR 60(b)(11) motion in the dissolution action would be a waste of judicial resources. However, because Diana's CR 60(b)(11) motion was not filed in the dissolution action, the trial court simply did not have authority to grant the motion under CR 60(e)(1). In family law cases, a trial court cannot act outside statutory proceedings as defined by the governing rule and statute, here CR 60(b)(11) and RCW 26.09.170. *In re Marriage of Soriano*, 44 Wn. App. 420, 421, 722 P.2d 132 (1986). Although our decision may result in the expenditure of additional judicial resources, both Diana and the trial court could have avoided this result by complying with CR 60(e)(1).

We hold that the plain language of CR 60(e)(1) required Diana to file her CR 60(b)(11) motion in the original dissolution action, not in the separate breach of contract action. As a result, we hold that the trial court did not have authority to modify the dissolution decree in the breach of contract action.

---

[3] Under GR 14.1(a), an unpublished court of appeals decision filed on or after March 1, 2013 may be accorded such persuasive value as we deem appropriate. GR 14.1(c) provides that appellate courts should not cite or discuss unpublished decision "unless necessary for a reasoned decision." We discuss *Darby* here because it is the only case that addresses this issue.

CONCLUSION

We reverse and vacate the trial court's modification of the dissolution decree and award of attorney fees to Diana, and we remand for further proceedings.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

ADDITIONAL ANALYSIS

A.    LEGAL BACKGROUND

A party must file a motion under CR 60(b)(11) within a "reasonable time." CR 60(b). Whether a party's motion was filed within a reasonable time depends on the facts and circumstances of the case. *Ha v. Signal Elec., Inc.*, 182 Wn. App. 436, 454, 332 P.3d 991 (2014), *review denied*, 182 Wn.2d 1006 (2015). Major considerations include whether the moving party has a good reason for failing to act sooner and whether the delay prejudiced the nonmoving party. *Tatham v. Rogers*, 170 Wn. App. 76, 98-99, 283 P.3d 583 (2012). But the passage of time alone is not always controlling, as a "triggering event" may occur long after entry of judgment that provides the basis for a motion to vacate that judgment. *In re Marriage of Thurston*, 92 Wn. App. 494, 500, 963 P.2d 947 (1998).

In addition, CR 60(e) provides the procedure for consideration of a CR 60(b) motion. First, the motion must be "supported by the affidavit of the applicant or the applicant's attorney setting forth a concise statement of the facts or errors upon which the motion is based." CR 60(e)(1). Second, once the motion and affidavit are filed, "the court shall enter an order fixing the time and place of the hearing thereof and directing all parties to the action or proceeding who

8

may be affected thereby to appear and show cause why the relief asked for should not be granted." CR 60(e)(2). Third, the motion, affidavit, and show cause order must be served upon all parties affected "in the same manner as in the case of summons in a civil action at such time before the date fixed for the hearing as the order shall provide." CR 60(e)(3).

B.      OTHER CR 60(b) ARGUMENTS

Otto argues that the trial court erred in granting Diana's CR 60(b)(11) motion because she (1) did not file the motion within a reasonable time as required under CR 60(b), (2) failed to file an affidavit supporting her motion and failed to provide proper notice and service for the motion as required in CR 60(e), (3) did not show extraordinary circumstances justifying modification of the dissolution decree, and (4) was equitably estopped from taking the current action. Otto also argues that even if relief was justified under CR 60(b)(11), the trial court erred in ordering him to sell the property both because it did not have authority under CR 60(b) to modify rather than vacate the dissolution decree and because the court could not require a sale without his consent.

Because we are vacating the trial court's modification of the dissolution decree, we decline to consider these issues. However, if Diana files a new CR 60(b)(11) motion in the dissolution action, the trial court will need to address whether Diana filed the motion within a reasonable time and, unlike in this case, the court will have to enforce the procedural requirements of CR 60(e).

We also address one issue regarding extraordinary circumstances that could arise again if Diana files a new CR 60(b)(11) motion in the dissolution action. The trial court focused on the hold harmless agreement in the dissolution decree. That provision stated that "[e]ach party shall

9

hold the other party harmless from any collection action relating to separate or community liabilities set forth above, including reasonable attorney's fees and costs incurred in defending against any attempts to collect an obligation of the other party." CP at 127.

The court made a finding of fact, which actually was a conclusion of law,[4] that Otto "violated the hold harmless provision in the Divorce Decree when he failed to make timely mortgage payments." CP at 346. The court then concluded that extraordinary circumstances justified modification of the dissolution decree "to give meaning to the hold harmless provision," and that Otto's "violation of the hold harmless provision . . . constitutes a manifest injustice." CP at 347.

The trial court's conclusion that Otto violated the dissolution decree's hold harmless provision was error. Under the provision's plain language, Otto's failure to make timely mortgage payments was not a breach unless it resulted in a collection action against Diana. But Diana did not present any evidence that she had been subject to a collection action.

## C.    TRIAL COURT APPEARANCE OF FAIRNESS

Otto argues that unfair elements of the trial court proceedings indicate that the trial court was biased against him. We disagree.

Under the appearance of fairness doctrine, a judicial proceeding is valid only if a reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial, and neutral hearing. *Neravetla v. Dep't of Health*, 198 Wn. App. 647, 670, 394 P.3d 1028 (2017). Under this doctrine, a judge must be impartial both in fact and in appearance. *Id.*

---

[4] This court treats legal conclusions that are incorrectly denominated as findings of fact as conclusions of law, and reviews them de novo. *Kitsap County Consol. Hous. Auth. v. Henry-Levingston*, 196 Wn. App. 688, 697, 385 P.3d 188 (2016).

The party asserting the doctrine must show evidence of a judge's actual or potential bias. *Id.* The Code of Judicial Conduct, which provides guidance for judges, states that a judge "shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." CJC 2.11.

Here, Otto argues that several facts show an appearance of bias. But the record does not support his argument. We conclude that Otto does not demonstrate that the trial court lacked impartiality or presented an appearance of unfairness. Accordingly, we hold that the trial court did not violate the appearance of fairness doctrine.

D.      AWARD OF ATTORNEY FEES

Otto argues that the trial court erred in awarding Diana reasonable attorney fees. Because we reverse the trial court's modification of the dissolution decree, we also vacate the trial court's award of attorney fees to Diana.

E.      ATTORNEY FEES ON APPEAL

Both parties request reasonable attorney fees on appeal under RAP 18.1. We decline to award attorney fees to either party.

Otto is the prevailing party. But he identifies no basis for the award of reasonable attorney fees. RAP 18.1 provides for the award of attorney fees under "applicable law." Otto has not shown any applicable law that would allow him to recover attorney fees on appeal, particularly when he represented himself. Diana is not the prevailing party, and therefore is not entitled to attorney fees. Accordingly, we hold that neither party is entitled to attorney fees on appeal.

No. 48903-1-II

## CONCLUSION

We reverse and vacate the trial court's modification of the dissolution decree and award

of attorney fees to Diana, and we remand for further proceedings.

_____
MAXA, A.C.J.

We concur:

_____
JOHANSON, J.

_____
LEE, J.